UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EMANUEL DASH,

                              Plaintiff,

            -against-

DETECTIVE RONALD J. MONTAS, Sh. #6795,
DETECTIVE CHRISTIAN HOELL,
SERGEANT NEWELL LAIRD, and
DETECTIVE WILLY JOHNSON, Sh. #4446,

                              Defendants.

------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

Jury Trial

18 CV 2427 (PKC) (RER)

        Plaintiff, EMANUEL DASH ("DASH") by and through his attorneys, Vik Pawar and Edward Zaloba, Esqs., respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.     Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§1983 and 1988.

### JURISDICTION

2.     The action is brought pursuant to 42 U.S.C. §§ 1983, and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.     Jurisdiction is found upon 28 U.S.C. §§1331, and 1343.

### VENUE

4.     Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6. Plaintiff is and at all relevant times resident of the County of Kings, City and State of New York.

7. Defendants RONALD J. MONTAS ("MONTAS"), CHRISTIAN HOELL ("HOELL"), NEWELL LAIRD ("LAIRD"), and WILLY JOHNSON ("JOHNSON") are detectives with the NYPD and are sued in their individual and official capacities.

## FACTS

8. Defendants MONTAS, HOELL, LAIRD and JOHNSON were investigating a string of four armed robberies in the Bed-Stuy section of Brooklyn, New York.

9. The robberies all took place in April 2015.

10. MONTAS was the lead detective and he conferred, consulted and received information and input from HOELL, LAIRD, and JOHNSON about the investigation of the robberies.

11. Each robbery involved a single perpetrator who used a gun as a weapon.

12. From their investigation, defendants determined that the four robberies formed a "pattern" where the perpetrator would wear a mask to hide his/her identity and a glove on one hand. Defendants also learned that two separate guns were used during the commission of the robberies. The target of the robberies were commercial establishments.

13. During the course of the investigation, defendant HOELL learned that a DNA sample from the perpetrator was available at the scene of one out of the four robberies.

14. HOELL collected the sample which he arranged to have sent to the Office of Chief Medical Examiner and put through the NYPD DNA database. The submitted DNA did not match anyone whose DNA was in the data bank.

15. In fact, Plaintiff's DNA was in the data bank. Therefore, HOELL knew that the DNA belonging to the perpetrator who fit the "pattern" of the robbery was not that of the plaintiff. Defendant LAIRD, HOELL's partner, was similarly made aware of the above stated fact.

16. There were at least six (6) witnesses/victims when the perpetrator committed the robberies.

17. Defendant HOELL displayed to those victims/witnesses a photo-array of possible perpetrators based upon the description gathered from video-tapes and eye-witness accounts.

18. One of the witnesses selected the photograph of an individual (Robert R.) as being a person who he believed to be the person who committed one of the robberies that fit the "pattern."

19. Plaintiff is not Robert R.

20. On April 27, 2015, defendants arrived at plaintiff's home.

21. On April 27, 2015, plaintiff was falsely and unlawfully arrested inside his home without any incident. No weapons or any mask, or clothing that matched the perpetrator were found on his person or inside his home. Neither were any items seized or

noted that would lead a reasonable person, let alone a detective to believe would fit the "pattern" or qualify as connecting plaintiff to any of the robberies.

22. MONTAS and JOHNSON brought plaintiff inside a police precinct and purported to read him his Miranda rights.

23. When JOHNSON left the room briefly, MONTAS coerced and forced plaintiff to draft a confession. MONTAS accomplished this by threatening plaintiff.

24. As part of the coercion, MONTAS told plaintiff that if he did not write out a confession, "[MONTAS] would blow [plaintiff's] brains out and tell everyone that [plaintiff] had attempted to steal [JOHNSON'S] weapon." JOHNSON was present when MONTAS made these threats.

25. Fearing for his life and well-being, plaintiff, who has a limited capacity, proceeded to write a confession as it was dictated to him by MONTAS. The confession was non-sensical.

26. The alleged confession was neither recorded nor was it video-taped. NYPD give their detectives cell phones to use for official business. In addition, the detectives routinely carry their own personal cell phones. These cell phones have the capabilities for audio and/or video recordings. Despite having these recording devices at their disposal, MONTAS and JOHNSON failed to record this incredible, self-incriminating statement by plaintiff.

27. Defendants refused or purposely avoided to turnover material that constituted *Rosario* and *Brady* material. Defendants did not inform the District Attorney of exculpatory evidence that did not implicate plaintiff as the perpetrator of the "pattern" of robberies.

28. Defendants thereafter testified at the Grand Jury.

29. Based on defendants' false, perjurious and misleading testimony, plaintiff was indicted.

30. As a result of the indictment (procured through misinformation, half-truths and the failure to produce exculpatory evidence), plaintiff was incarcerated for seventeen months.

31. Plaintiff testified at his trial on his own behalf.

32. None of the eye-witnesses to the robberies identified plaintiff as the perpetrator.

33. After a trial, the jury discounted defendant officers' incredible and fanciful tale and believed plaintiff and acquitted him.

## AS AND FOR THE FIRST CAUSE OF ACTION
(Unlawful Seizure, Excessive Force, Malicious Prosecution under the 4th Amendment, Due Process Clause of the 14th Amendment)

34. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

35. Plaintiff was seized and falsely arrested without probable cause by the defendants.

36. Plaintiff's rights to be free from false arrest without a warrant or probable cause were violated. Defendants did not find any gear, weapon or items that were used by the perpetrator on either plaintiff or his home.

37. Thereafter, plaintiff was unlawfully held at the precinct by the defendants.

38. Plaintiff was then threatened with violence by MONTAS.

39. In addition, plaintiff's Substantive Due Process rights under the Fourteenth Amendment and post-arraignment seizure under the Fourth Amendment were violated by defendants who initiated criminal proceedings against him without probable cause.

40. Defendants drafted and swore to false criminal court complaint paperwork against plaintiff and falsely charged him with four robberies.

41. The paperwork was then forwarded to the District Attorney's Office who continued the prosecution of plaintiff based upon the false facts provided by the defendants.

42. Defendants swore in their official NYPD paperwork that plaintiff's prosecution was justified even though they knew the contents of the paperwork to be false.

43. Defendants were aware that there was no probable cause to arrest plaintiff let alone initiate criminal proceedings against him. Therefore, they acted with malice.

44. Defendants failed to retract the false charges against plaintiff and prolonged plaintiff's post-arraignment seizure and prosecution. Defendants' actions constituted malicious prosecution because they knowingly filed false and unsubstantiated charges against Plaintiff, failed to drop them, or inform the District Attorney's office of the falsity of the charges and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated.

45. Lastly, defendants failed to inform the DA's office of exculpatory evidence that would have shown that other suspects other than plaintiff were responsible for the string of robberies.

46. The criminal proceedings terminated in plaintiff's favor.

47. As a result of the aforementioned conduct of all Defendants, Plaintiff's constitutional right to be free from unlawful seizure, excessive force and malicious prosecution were violated.

### AS AND FOR A SECOND CAUSE OF ACTION
(Denial of Right to Fair Trial)

48. Plaintiff repeats, reiterates, and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

49. Defendants fabricated probable cause and detained and initiated criminal proceedings against plaintiff for all four robberies.

50. The false and fabricated charges and testimonies by defendants denied plaintiff the right to a fair trial.[1]

51. The false statements by the defendants were presented to the prosecuting authorities, to the judge at arraignment, to the grand jury and ultimately to a jury. The false and fabricated evidence restricted plaintiff's freedom of movement because the false statements were forwarded to the District Attorney's Office which caused plaintiff to be detained and prosecuted for seventeen months.

52. All charges against plaintiff were dismissed after a jury acquitted him.

---

[1] It is not uncommon that NYPD officers to submit falsely sworn complaints arresting and prosecuting citizens without probable cause and then committing perjury and/or manufacturing evidence in an effort to initiate criminal prosecutions against individuals like plaintiff. *See Colon v. City of N.Y.*, No. 09 Civ. 8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) ("Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration ... there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.").

53. But for the false charges and testimonies, that snared plaintiff for nearly two years since his seizure and post-seizure deprivation of liberty, plaintiff would not have endured numerous court appearances and suffer a deprivation of his rights under the Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution.

54. As a result of defendants' conduct, plaintiff suffered injuries.

### AS AND FOR A THIRD CAUSE OF ACTION
(Failure to Intervene)

55. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Defendants LAIRD was aware of the information possessed by HOELL. LAIRD knew that HOELL had exculpatory evidence that was favorable to the plaintiff.

57. LAIRD had a duty and an opportunity to intervene on plaintiff's behalf to prevent further deprivation of plaintiff's due process rights.

58. LAIRD's intervention would have ended plaintiff's detention.

59. Defendant JOHNSON was aware that MONTAS was threatening plaintiff with violence if plaintiff did not write out a confession.

60. JOHNSON was present when under threat and duress, MONTAS forced plaintiff to confess.

61. JOHNSON had a duty and an obligation to intervene on behalf of plaintiff to prevent violation of plaintiff's rights.

62. However, LAIRD and JOHNSON failed to intervene.

63. Their failure caused plaintiff to suffer deprivation of his constitutional rights.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Deprivation of Rights under the Fourteenth Amendment-Due Process)

64.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     Defendants worked as a team on the investigation of the robberies.

66.     Defendants communicated with each other about the progress or lack thereof regarding any possible suspects.

67.     Defendants knew about the existence of DNA evidence that exculpated plaintiff.

68.     Defendants knew about the fact that an eye-witness had identified another individual other than plaintiff as the perpetrator of the robberies.

69.     Defendants had an obligation to disclose the foregoing information in a timely fashion to the prosecuting authorities.

70.     The foregoing information would have bene favorable to plaintiff and would have prevented his further incarceration for an extended period.

71.     Defendants affirmatively concealed evidence that would have exonerated plaintiff and this concealment and withholding of evidence violated the substantive and procedural due process rights of the plaintiff guarantee under the Fourteenth Amendment and plaintiff suffered injuries.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Fifth Amendment)

72.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     Plaintiff was brought to the precinct by the defendants.

74. Defendants MONTAS and JOHNSON used the threat of deadly force to force a coerced statement from plaintiff.

75. The "statement" was not audio or video recorded. There were no eye-witnesses besides the defendants to this statement.

76. The statement was non-sensical.

77. Defendants used the forced statement as plaintiff's confession to the four robberies. Plaintiff lost his free will and volition in making the forced and coerced statement under threat of deadly force. MONTAS threats were overbearing on plaintiff and he lost any sense of voluntariness.

78. The coerced confession under the threat of violence was presented to the prosecuting authorities.

79. The confession was used to deprive plaintiff of his liberty and his procedural and substantive due process rights.

80. Based on MONTAS and JOHNSON's actions, plaintiff's right to be free from self-incrimination and rights protected under the Fifth Amendment were violated.

81. But for the illegally obtained statement, plaintiff would not have endured the injuries as outlined in this complaint.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages as determined by a jury:

(B) punitive damages in an amount to be determined by a jury;

(C) reasonable attorney's fees and the costs, expenses and disbursements of this action; and

(D) such other and further relief as appears just and proper.

Dated: New York, New York
       June 15, 2018

                                      PAWAR LAW GROUP, P.C.
                                      20 Vesey Street, Suite 1210
                                      New York, New York 10007
                                      (212) 571-0805

                                      By: _____
                                        Vik Pawar, Esq. (VP9101)
                                        *Attorneys for Plaintiff*